```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION
```

RELIANCE INSURANCE CO.,

        Plaintiff,

v.                                      Case Number: 06-11548

TRISS CORPORATION,               HON. MARIANNE O. BATTANI

        Defendant.
                                  /

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. No. 40), and Defendant's Motion for Summary Judgment (Doc. No. 43). The Court heard oral argument on the motions on February 8, 2008, and at the conclusion of the hearing, took this matter under advisement. For the reasons that follow, the motions are **DENIED**.

**I. STATEMENT OF FACTS**

      Defendant Triss Corporation, ("Triss") purchased workers compensation and employers liability, commercial general liability, and business auto polices of insurance from Plaintiff Reliance Insurance Co. ("Reliance"). Reliance is the successor by merger to Reliance National Insurance Co. and Reliance National Indemnity Co. In October 2001, the Insurance Commissioner of Pennsylvania was appointed Statutory Liquidator of Reliance. Reliance brings it claims for the payment of additional insurance premiums based on the agreements it entered into with Triss regarding the insurance policies sold

in certain policy periods, dating back to 1991.

According to Plaintiff, the policies at issue included Retrospective Premium Endorsements. Am. Compl., ¶ 8. A retrospective premium is based on Triss' actual loss experience so additional premium payments are due as a result of the retrospective premium adjustments. Id., ¶ 9. Consequently, after the policy term was completed, Reliance conducted an audit to determine the actual amount of the relevant claims, payroll, sales, or vehicular information from the applicable policy year.

According to Reliance, Triss made estimated premium payments pursuant to the polices throughout the insurance relationship. Moreover, based on early retrospective premium adjustments and losses and audit results, Reliance paid, and Triss accepted, payments of Return Premiums in excess of $200,000. Pl.'s Ex. B, Kosowski, CFO for Pl., Dep., pp. 62, 107, 195. Triss refuses to pay additional premiums based on retrospective premium adjustments in the amount of $617,910. Am. Compl., ¶¶ 33-39; Kosowski Dep., p. 106.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

2

>establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact,

the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

## III. ANALYSIS

Plaintiff's motion requires the Court to assess the viability of Defendant's affirmative defense of breach of duty of good faith and fair dealing. Defendant seeks dismissal of the breach of contract claims, Counts I, II, III, XII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI, of the amended complaint  The parties advance multiple arguments in support of their motions, which are discussed below.

### A. Breach of Duty of Good Faith and Fair Dealing

In addition to its Answer to Plaintiff's amended complaint, Triss advanced an affirmative defense--that Reliance breached its duty of good faith and fair dealing

4

through its handling and payment of claims.  The defense reads:

> Upon information and belief, Reliance breached its duty of good faith and fair dealing under the insurance program, including various insurance policies sold thereunder, by, among other things, (1) failing to handle and pay claims in good faith and otherwise failing to act diligently in performing its contractual obligations; (2) failing to keep Triss reasonably informed about the claims; (3) failing to divulge to Triss the reasoning or basis for paying claims so that Triss cannot ascertain whether or not claims were paid out properly; (4) failing to divulge to Triss Reliance's settlement practices so that Triss cannot ascertain whether or not claims were settled properly; (5) failing to explain to Triss the basis for Reliance's calculation of the retrospective premium owed to Triss and/or due to Reliance; (6) failing to set and adjust custom and usage of the insurance business.

See Answer to Am. Compl. and Affirmative Defenses, No. 10.

Without question every contract imposes on each party to the agreement a duty of good faith in the performance and enforcement of the contract.  Stark v. Budwarker, Inc, 181 N.W.2d 298 (Mich. App. 1970).  Accord Commercial Union Ins Co v. Medical Protective Co, 393 N.W.2d 479 (Mich. 1986) (observing that the "implied covenant of good faith and fair dealing . . . arises from the contract between the insurer and the insured").  Reliance asserts that the duty has limited application under narrow circumstances that are not present in this case.  Plaintiff is correct that courts have held only that an insurer has the duty to act in good faith in negotiating a settlement within the policy limits and the duty to act in good faith in investigating and paying claims.  See, e.g., Murphy v. Cincinnati Ins. Co., 772 F.2d 273 (1985) (insurer has duty of good faith in investigating and paying claims); Wendt v. Auto Owners Ins., Co., 401 N.W.2d 375 (Mich. Ct. App. 1986) (insurer may be liable for breach of obligation to process claims in good faith); Commercial Union Ins. Co. v. Liberty Mut. Ins. Co., 393 N.W.2d 161 (Mich. 1986) (insurer may be liable for breach of obligation to process claim in good

5

faith); Stockdale v. Jamison, 330 N.W.2d 389 (Mich. 1982) (the good faith duty of to settle distinct from the contractual duty to defend).

Despite the limitations on the defense, no Michigan court has precluded this defense in the context of improper claims handling, and this Court will allow the defense to proceed provided the facts support a genuine issue of material fact exists relative thereto. Reliance contends there is not because, as a matter of law, it acted in accordance with the express terms of the applicable policies. In the alternative, it maintains Triss is estopped from raising the defense. Finally, it asserts that Triss cannot sustain its burden of proof because its expert testimony is insufficient to show bad faith.

### 1. Role of Discretion

Here the policies reserved the right to investigate and settle claims on Triss' behalf to Reliance. Further, Reliance had full discretion to investigate and settle claims.

> We have the right and duty to defend at our expense any claim, proceedings or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

Ee 1991-92 Worker's Compensation and Employer's Liability Insurance Policy The Commercial General Liability Policy contains similar language:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result."

See Pl.'s Ex. O, 1991-92 Commercial General Liability Coverage Form at 1.

Finally the Business Auto Policy also reserves discretion to Reliance: "We may investigate and settle any claim or "suit" as we consider appropriate." Pl.'s Ex. H, 1991-

92 Business Auto Coverage Form at 2.

Reliance concludes that the discretionary language in the policy cannot be overridden by the duty of good faith. Reliance is correct that an insurance policy must be enforced in accordance with the terms, and when an insurer acts in accordance with the express terms of a policy, it cannot have breached the duties of good faith and fair dealing. General Aviation Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1041 (6th Cir. 1990). However, when the issue raised involves the exercise of discretion, a duty of good faith arises, and the Court rejects Plaintiff's assertion to the contrary.

"Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." See Burkhardt v. City Nat'l Bank of Detroit, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975) (citing 3A Corbin, Contracts, § 644, pp. 78-84). Under Plaintiff's argument, it has a blank check to do what it likes relative to claims. This position is particularly egregious because in retrospective premium policies, errors in claims handling enrich the company at the policyholder's expense because as losses increase so do retrospective premiums. Consequently, the Court finds Plaintiff has not met its burden on summary judgment.

### 2. Role of equitable estoppel

Because Triss received and accepted the benefits of the coverage as well as return premium payments, Reliance concludes that Triss is estopped from raising its

affirmative defense.  The doctrine of equitable estoppel[1] operates as follows:

> Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of the facts.

Casey v. Auto Owners Ins. Co., 729 N.W.2d 277 (Mich. Ct. App. 2006) (internal quotation and citation omitted); see also Morales v. Auto-Owners Ins. Co., 582 N.W.2d 776 (Mich. 1998).

The undisputed facts show that Triss took no steps to rescind or cancel the policies it purchased and renewed the policies for eight consecutive years without objection.  Triss' objection first appeared in a letter dated September 20, 2001, more than two years after the expiration of the final policy term.  Pl.'s Ex. 8.  Reliance paid over $2,000,000 in claims, and Triss received over $200,000 of returned premium payments.  Nevertheless, Reliance's position--that Triss' acceptance of the benefits of coverage, including return premium payments, prevents it from raising this defense--is not persuasive for several reasons.  First, no Michigan authority for its position relative to retrospective insurance policies exists, and Plaintiff's reliance on Northern Assurance v. Meyer, 160 N.W.2d 617 (Mich. 1916), is misplaced.  In Northern Assurance, the insured had a traditional insurance policy in place for approximately one year and then sought to have the premium returned on the basis of fraud by the insurance agent. Id., p. 618.  The court denied the request, noting that the insureds took no action to rescind the policy, retained it with full knowledge of the underlying facts and remained in a position where they could enforce the coverage obligations under the policies in the

---

[1]Although Triss argues that Reliance's failure to plead equitable estoppel, prevents it from raising it here, the doctrine is not one that must be pleaded in a complaint.

8

event of loss. In contrast, here, a different type of policy is involved, and the insured was unaware of the relevant facts. Triss did object to Reliance's mishandling of claims and miscalculation of premiums, see Law Aff., Exs. 8 and 9; Ex. 10, after discovery, when it had the information relevant to this assertion. Unlike the insured in Northern Assurance, Triss did not have full knowledge of the underlying facts of how each claim was handled.

Secondly, courts are reluctant to apply equitable estoppel "absent intentional or negligent conduct designed to induce a plaintiff from bringing a timely action." Cincinnati Ins. Co. v. Citizens Ins. Co., 562 N.W.2d 648, 651 (Mich. 1997). There is no basis to apply it here. Triss is correct that the acceptance of an insurance policy does not carry with it an obligation to accept substandard performance, bad faith, or miscalculation of premiums. Therefore, the Court rejects this basis as one warranting summary judgment.

### 3. Sufficiency of the evidence

Under Michigan law, bad faith should not be used interchangeably with either "negligence" or "fraud." Michigan courts define "bad faith for instructional use in trial court as arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." Commercial Union Ins. Co. v. Liberty Mut. Ins. Co., 393 N.W,.2d 161, 164 (Mich. 1986).

Under this standard, Reliance argues that Triss offers no evidence of bad faith, just "mishandling" of the claims. The expert in claims handling retained by Triss found numerous errors that inflated the losses Reliance used to calculate retrospective premiums. Mishandling of claims could rise to the level of bad faith if, as Triss

9

contends, the adjusters ignored the advise of counsel, refused to follow the directions of supervisory personnel, or engaged in conduct that could be deemed indifferent.

Accordingly, the Court denies Plaintiff's request for summary judgment on the affirmative defense. The Court directs its attention to Defendant's motion, which seeks dismissal of Plaintiff's contractual claims based on the statute of frauds.

### B. Statute of Frauds

Michigan law voids any agreement, contract, or promise that is not signed by the party against whom the agreement, contract or promise is to be enforced when the agreement is not capable of being performed within one year. MICH.COMP.L. § 566.132(a). Triss maintains it is entitled to summary judgment on its affirmative defense of statute of frauds because the premium agreements could not be performed within one year and some were not signed by a representative of Triss. Therefore Counts I, II, III, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI of the amended complaint, which allege breach of contract, must be dismissed.

#### 1. Performance within one year

To determine whether claims are barred by the one-year limitation of the statute of frauds, the court must determine whether the oral contract is capable, by any possibility, of performance within one year of the agreement. Dumas v. Auto Club Ins. Ass'n, 473 N.W.2d 652, 657 (Mich. 1991). The Court finds that these contracts could not.

There is no dispute that the annual adjustment of premium begins eighteen months after the beginning of the policy period and annually thereafter. Even if there were no claims, some type of premium adjustment would occur at the end of the policy period. Therefore, as a matter of law they fall within the statute of frauds. Accordingly,

Reliance must meet the writing requirement to proceed with its claims.

### 2. Writing requirement

Reliance has not attached any premium agreements for three policy years, 5/22/91 to 5/22/92, 5/22/97 to 5/22/98, and 5/22/98 to 5/22/99. In addition, the agreement Reliance advances for the 5/22/95 to 5/22/96 policy year is not signed by Triss.

Nevertheless, a note or memorandum may be sufficient under the statute of frauds in any number of forms, including a letter, an account statement, a draft or note, or a check. 10 Williston, Contracts (4th ed), § 29.21, pp. 577-581; see, e.g., Adell Broadcasting Corp. v. Cablevision Indus., 854 F.Supp. 1280, 1282, 1291 (E.D.Mich. 1994) (the federal district court, applying Michigan law noted that a check endorsed by the defendant and merely stating "Cable 1 Equipment" was enough to show that there was at least an agreement between the parties and was sufficient to satisfy the writing requirement of the statute of frauds).

The Court finds that some of the agreements are evidenced by signed writings that sufficiently comply with the statute of frauds. Triss made 65 premium payments pursuant to the agreements from 1991 through 1999. See Pl.'s Exs. C and E.

Further, even if Reliance cannot satisfy the conditions as to the identified premium agreements, Defendant is estopped from enforcing the statue of frauds because it accepted the benefits of the agreements of insurance, and the insurer performed in reliance upon those agreements. Oxley v. Ralston Purina Co., 349 F.2d 328 (6th Cir. 1965).

> He who by his language or conduct leads another to do, upon the faith of an oral agreement, what he would not otherwise have done, and changes his position to his prejudice, will not be allowed to subject such person to loss or injury, or to avail himself of that change to the prejudice of such other party.

Id.; Accord Pursell v. Wolverine Pentronix, 205 N.W. 2d 504 (Mich. Ct. App. 1973).

Finally, the right to recover on quantum meruit is available in cases where the contract is void under the statute of frauds but has been executed by one party and the other has received the benefit. Ordon v. Johnson, 77 N.W.2d 377 (Mich. 1956). Accordingly, Reliance can proceed on these policies even if the statute of frauds is not satisfied unless Triss succeeds on its alternate argument, that summary judgment is warranted because Reliance committed the first material breach of contract.

### C. Did Plaintiff Commit the First Material Breach?

Under Michigan law, when a party materially breaches an agreement, and the contract is executory, the breach excuses performance. The alleged breach, as identified by Triss, arises out of policy language authorizing Reliance to charge retrospective premiums on "amounts Reliance pays or estimates it will pay for losses" under the relevant insurance polices. See e.g. Def.'s Ex. 7, Law Aff. When Reliance entered liquidation, it stopped handling and paying claims and shipped the workers' compensation claim files to the Michigan Property & Casualty Guaranty Association ("MPCGA").[2] The question before the Court is whether the policy language precludes collection of the amounts the insurance guaranty association pays or estimates it will pay under the guaranty association's statutory obligations.

---

[2] Guaranty associations are created by statute as a safety net to pay certain covered claims under insurance policies sold by insolvent insurance companies. See e.g. MICH.COMP.L. § 500.7901.

12

The facts are undisputed. After liquidation, MPCGA paid many of Triss' claims; Reliance paid none. Not only does the liquidation order require payment of all uncollected premiums, the governing statute authorizes an insurer in liquidation to collect unpaid premiums resulting from claims being handled and paid by the MPCGA.

Triss argues that the order and statute prevent Reliance from collecting unpaid premiums that were not due at the time of the declaration of insolvency. The Court declines to adopt this argument. Although there is no question that the numerical calculation regarding losses may not have been possible at the time of the declaration of insolvency, the obligation to pay the claims was already in place. Further, the statute was not enacted to protect Triss from meeting its contractual obligations, only to protect it from financial losses it might suffer as a result of Reliance's insolvency.

> As a condition of doing business in Michigan, specified insurers are required under the act to be members of the association. M.C.L. § 500.7911; M.S.A. § 24.17911. The act is designed to protect the public against financial losses to policyholders or claimants because of the insolvency of insurers. The benefits of the act are triggered if the claimant presents a "covered claim." M.C.L. § 500.7931; M.S.A. § 24.17931. M.C.L. § 500.7925(1)(c); M.S.A. § 24.17925(1)(c) provides that, to constitute a "covered claim," a claim must be presented by an insured to the association "on or before the last date fixed for the filing of claims" at the insurer's insolvency proceedings in its domiciliary state.

Satellite Bowl, Inc. v. Michigan Property & Cas. Guaranty Ass'n, 419 N.W.2d 460, 462 (Mich. Ct. App. 1988).

The gist of the argument advanced by Triss, is that Reliance will receive a windfall by charging Triss for retrospective premiums on losses Reliance never paid. It adds, that at most, Reliance's collection of retrospective premiums should be limited to the amounts that Reliance pays to the MPCGA in liquidation. According to Triss, the

MPCGA stands in line to recover compensation from the insolvent insurance company just like any other claimant. Even if the MPCGA's expenses come first in the order of distribution, claims under polices for losses incurred are second in priority to claim payments. Thus, the MPCGA must compete with all of the insolvent insurance company's insured claimants for reimbursement of claim payments. So if Reliance compensated the MPCGA fifty cents on the dollar, Reliance is charging Triss more than what it actually pays.

Under Triss' reasoning, it reserves a windfall to itself because it had the good fortune of contracting with an insurer that became insolvent. Triss has retained the benefits of its insurance agreements; its claims have been paid in full, yet, it would not have to fulfill its agreement to pay additional premium amounts based on claims. In effect, this position allows Triss to receive advances that it would never have to repay.

> Any losses paid by [the insurer] are covered into additional premiums paid by [the insured]. The result of this shifting of money is that [the insurer's] loss payments are, to a significant degree, simply advances on behalf of [the insured].

Edward Gray Corp. v. Nat'l Union Fire Ins. Co., 94 F.3d 363, 367 (7th Cir. 1996) (quotation omitted). The Court rejects the notion that Triss is entitled to the coverage it bargained for without the accompanying payment obligation.

Triss also contends that Reliance committed a material breach when it dismissed the claims handler. The Court disagrees. Reliance reserved the "right to assume the control and handling of any Claim at any time." Def.'s. Ex. 12, Claims Services Agreement at 3. Moreover, Reliance changed the claims handler before, and Triss had acquiesced to those changes during the policy years. Pl.'s Ex. M at 31, 32. This is not the type of conduct that constitutes a material breach thereby relieving Triss of any duty

of performance. Accordingly, Triss has failed to establish that Reliance committed the first material breach.

## IV. CONCLUSION

In accordance with the opinion issued above, the Court **DENIES** the parties' motions for summary judgment.

**IT IS SO ORDERED**.

                                      s/Marianne O. Battani
                                      MARIANNE O. BATTANI
                                      UNITED STATES DISTRICT JUDGE

Dated: May 1, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to counsel of record on this date by ordinary mail and/or electronic filing.

                                      s/Bernadette M. Thebolt
                                      Deputy Clerk